FILED BY

2006 MAY 31  PM 3: 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-21550-CIV-KING/GARBER


PAUL R. MARCUS,

     Plaintiff,

vs.

GARLAND, SAMUEL & LOEB, P.C. and
EDWARD T.M. GARLAND,

     Defendants.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS, GARLAND SAMUEL, AND LOEB, P.C. AND EDWARD T.M. GARLAND'S MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, PAUL R. MARCUS, by and through his undersigned counsel, files this his Memorandum of Law in Opposition to Defendants, GARLAND, SAMUEL & LOEB, P.C. and EDWARD T. M. GARLAND's Motion for Final Summary Judgment and in support hereof states:

### OVERVIEW

This is a breach of contract case wherein Plaintiff, PAUL R. MARCUS, a Florida attorney referred to the Defendants Jerome Jacobson, who was facing prosecution in the United States District Court in the Middle District of Florida (hereinafter referred to as the underlying matter). It was agreed via telephone between the Defendants and Plaintiff, that Plaintiff would participate in the legal representation of Jerome Jacobson in the underlying matter. There was an agreement that Plaintiff's participation fee would be one third of the fee paid by Jerome Jacobson to Defendants in the underlying matter. Thereafter, on September 17, 2001 Plaintiff in compliance

with the agreement provided information to the Defendants and requested a copy of the "Retainer Agreement" with Jerome Jacobson, as Plaintiff had not received a copy of same from the Defendants.  On September 24, 2001 the Defendant confirmed Plaintiff's referral of Jerry Jacobson (hereinafter referred to as Jacobson) to Defendants in the underlying matter and transmitted an initial payment of $5,000.00 to the Plaintiff in Miami-Dade County, Florida. Although the nonrefundable flat attorneys' fee paid to the Defendants by Jacobson in the underlying action, had been paid by Jacobson by September 7, 2001, no further payment was sent to the Plaintiff.

The Defendants have filed a Motion for Final Summary Judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and Rule 7.5, Local Rules of the Southern District of Florida claiming that the breach of contract action is barred, because the contract violates the Rules Regulating the Florida Bar and the Florida Statute of Frauds. The Defendants' Motion for Final Summary Judgment fails because the Defendants have failed to meet their burden, and there are genuine issues of material fact to be determined by the trier of fact.

## PROCEDURAL HISTORY

Plaintiff filed a Complaint for Breach of Contract in the 11 [th] Judicial Circuit in and for Miami-Dade County, Florida on April 15, 2005.   The Complaint was then served on the Defendants on May 10, 2005. On or about June 8, 2005 Defendants properly removed this matter to the United States District Court Southern District of Florida  pursuant to 28 U.S.C. §1441(a) and 1446.

The Defendants' Notice of Removal states that "this Court has original jurisdiction over the matter under 28 U.S.C. §1332 in that there is complete diversity" and that the matter in controversy exceeds the sum of or value of $75,000.00 exclusive of interests and costs.  As Plaintiff's Complaint did not allege an amount of damages in excess of $75,000 the Defendants

CASE NO. 05-21550-CIV-KING/GARBER

filed the affidavit of Donna Young (the treasurer, administrator and controller of Defendants) in support of the amount in controversy. Ms. Young states in her affidavit that the Defendants received a total of $370,205.59 in attorneys' fees for representing Jacobson in the underlying matter in the Middle District Court of Florida.

On or about July 7, 2005 the Defendants filed a Motion to Dismiss or Transfer and on August 31, 2005 said motion was denied. Thereafter, the parties proceeded with discovery. The depositions of Paul Marcus, Marvin Braun, and Edward Garland have taken place. Written discovery has also been exchanged between the parties.

On May 9, 2002 Defendant filed a motion for Final Summary Judgment and Plaintiff opposes said motion as the Defendants have failed to meet their heavy burden and there is substantial evidence in the record that there was a breach of contract by the Defendants and this action is not barred by the Florida Statute of Frauds.

<u>PLAINTIFF'S STATEMENT OF MATERIAL FACTS</u>

Plaintiff, PAUL R. MARCUS is an attorney licensed to practice in the State of Florida and a resident of Miami-Dade County, Florida. (App. A,p.1)[1]  Defendant GARLAND, SAMUEL & LOEB, P.C. is a law firm in the State of Georgia,  and Defendant EDWARD T.M. GARLAND is an attorney in the State of Georgia. (App. A,p.1)   Plaintiff first met the Defendant, Edward T.M. Garland, (hereinafter referred to as Garland), in 1981. (App. B,p.1) Plaintiff had some knowledge of Defendant Garland's skills an attorney and the fees he charged his clients for his representation, as Defendant Garland had represented Plaintiff in a matter in the 1980's. (App. B,p.1)

---

[1]

Attached hereto is Plaintiff's appendix to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Final Summary Judgment. Documents shall be referenced by "App." followed by the Appendix letter and page number if applicable.

-3-

CASE NO. 05-21550-CIV-KING/GARBER

On or about August 22, 2001, Plaintiff spoke with Marvin Braun, (hereinafter referred to as Braun), a close friend to Plaintiff's brother, and stepbrother of Jerome P. Jacobson. (App. B,p.1) At that time, Braun was acting on Jacobson's behalf to obtain counsel for Jacobson (Jacobson had just been released from jail and was to be prosecuted in the Middle District of Florida). (App.B,p.2)   Plaintiff described in his deposition taken on February 3, 2006 at page 46 beginning at line 21, the circumstances and how the referral of Jacobson to the Defendants was made:

> Mr. Braun and Jacobson were in an attorney's office in Atlanta. It was a weekday, it was my guess 6:30, 7 o'clock at night. They were about to retain an attorney for Mr. Jacobson. I contacted Marvin [Braun], talked to him about the matter at hand, discussed certain things about it, his involvement, Jacobson's involvement, and suggested that I contact Mr. Garland and see if Mr. Garland would agree to the representation of Mr. Jacobson and that I would assist him locally, locally meaning Miami, with whatever I could. And then I contacted Mr, Garland– you want me to go further with that, sir, or not?  (App. C, pp.46-47)

At the time of Plaintiff's conversation with Braun, Plaintiff understood that there were going to be charges in the McDonald's Monopoly matter against Jacobson, and it was already publicized that there was a real problem. (App. B,p.2)

Plaintiff immediately then spoke by telephone to Garland (at the time Garland and he both realized this was a substantial case) and Garland informed Plaintiff that he had no client involved in the McDonald's Monopoly matter, so there was no conflict of interest for Garland.  (App. B). Garland asked whether Jacobson had the ability to retain him and Plaintiff assured Garland that the Jacobson family had the resources to do so. (App. B,p.2)   Also, during this telephone conversation, Garland and the Plaintiff discussed Plaintiff's participation fee and Garland made it crystal clear that Plaintiff would participate in ways which included: researching and sending articles from the newspaper to him relating to the matter, letting Garland know what was

-4-

CASE NO. 05-21550-CIV-KING/GARBER

happening with the McDonald's matter in Miami; making himself available by telephone any time of the day or evening and perhaps travel to Atlanta to assist with the case, and being available for consultation. (App. B,pp.2-3)

Garland stated that Plaintiff would participate in the representation of Jacobson and would receive one third of the attorney's fee. Plaintiff agreed to what Garland proposed. (App. B,p.3) Garland gave to Plaintiff the various telephone numbers to give to Braun to reach him including his office, cellular, and home telephone numbers. Plaintiff then spoke with Braun again and gave Braun the various telephone numbers. (App. B,p.3)    Because of Plaintiff's efforts through Jacobson's stepbrother, Marvin Braun, Jacobson retained Garland as his attorney on August 23, 2001 and as of September 7, 2001 Jacobson had paid to Defendants $384,444.57 for a legal fee and costs. (App.G, App. H)  The Defendants' client card for Jacobson states that the Jacobson McDonald's matter was "referred by: to etmg [Garland] from Jerry's brother." (App.G)

Thereafter, pursuant to the participation agreement, Plaintiff advised Garland on September 17, 2001 by letter of the information he had pertaining to what was occurring in Miami relating to the McDonald's Monopoly case. (App. B,p.3)  Plaintiff also requested a copy of the "Retainer Agreement" in the Jacobson matter from Garland to confirm that their agreement had been reduced to writing and was in compliance with the Rules Regulating the Florida Bar. (App. B,p.3) On September 2, 2001 Garland sent to Plaintiff an unsigned check with a cover letter which begins with, "Thank you for referring Jerry Jacobson to me." and ends with "Thank you again for your referral." (App. B,p.3)  Forty one days after the original meeting with Jacobson on October 3, 2001 a "retainer agreement" relating to the representation of Jacobson in the McDonalds Monopoly matter was reduced to writing. (App. E)  The "Flat Fee plus costs" agreement provided for a non-refundable legal fee of $300,000.00 and $84,000.00 for costs or

CASE NO. 05-21550-CIV-KING/GARBER

expenses. (App. E)   As stated previously $384,444.57 was paid to the Defendants, all of which was placed in their account receivable for Jacobson (not a trust account).[2] (App. H)

On October 8, 2001 Plaintiff returned the unsigned check to Garland and again requested a copy of the retainer agreement, along with his participation fee. (App. B,p.4)   On October 9, 2001 Garland returned the signed check with the notation "referral fee" and again thanked Plaintiff for referring the Jacobson case to him. (App. B,p.4)   A copy of the written retainer agreement was never provided to Plaintiff by Garland in spite of Plaintiff's numerous telephone calls and letters.   (App. B,p.4)   Letters in addition to those referenced above, were sent to Garland by Plaintiff and attorney Bill Hoppe (on Plaintiff's behalf) on October 15, 2001, December 20, 2001, March 7, 2002, April 15, 2002, and August 1, 2002.   (App. B,p.4) Plaintiff continued to request a copy of the retainer agreement between the Defendants and Jacobson, but was not provided same until recently through discovery in this matter.   (Exhibit B,p.4)

The attorneys' fees and costs were paid to Defendants  by payment of $70,000 on August 23, 2001 and $314,444.57 on September, 7, 2001 (expenses of $14,238.98 were incurred in the Jacobson matter so the fee is $370,205.59).[3]   (App. F, App. H and App J)  Garland's hours in the Jacobson case total 100.2 hours with an attorney's fees  rate of $500.00 per hour totaling $50,100.00. (App. I)  On or about October 3, 2001, (more than a month after Garland first met Jacobson), a "contract of employment" was entered into by Jacobson with the Defendants.  (App.

---

[2]Florida Rules of Professional Conduct Rule 5-1.1 require an advance for costs or fees to be placed in a clearly labeled and designated trust account.

[3]
The attorneys' fee of $370,205.59 reflected on the Defendants account receivable for Jacobson in inconsistent with the attorneys' fee agreement of October 3, 2001 and the affidavit of Jerome Jacobson filed by the Defendants, both of which set forth an attorneys' fee of $300,000.

CASE NO. 05-21550-CIV-KING/GARBER

E).  This contract or retainer agreement provides for $300,000 to be attorneys' fees and that $84,000 was already posted for anticipated expenses. (App. E)

Marvin Braun's deposition testimony is consistent with Plaintiff's testimony as to the circumstances of the referral of Jacobson to the Defendants (App. C, p.6-9)  Marvin Braun was searching for a lawyer for his stepbrother while in Atlanta after getting his stepbrother out of jail. (App.C,p.6)  Braun understood that Plaintiff was going to be paid a "referral fee."  (App. C, p.14)  Both Marvin Braun and Jacobson were shocked and stunned to learn the Defendants had not paid Marcus.  (App.C pp.14, 88)

## STANDARD FOR MOTION FOR FINAL SUMMARY JUDGMENT

The Defendants are seeking summary judgment and bear the heavy burden of demonstrating that there is no actual dispute as to any material fact in this case. *Adickes v. S.H. Kress & Co.* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).  The evidence and all factual inferences from the evidence are to be  viewed in the light most favorable to the nonmoving party. *Casey Enterprises v. American Hardware Mutual Insurance Co.* 655 F.2d 598, (5th cir. 1981). In this case, the Defendants failed to meet their burden.  Alternatively,  there is substantial evidence and testimony which when  viewed in a light most favorable to the Plaintiff, there are issues of fact to be determined by the trier of fact.

## ARGUMENT

### A. THE DEFENDANTS FAIL TO MEET THEIR HEAVY BURDEN AND THERE ARE GENUINE ISSUES OF MATERIAL FACT TO BE DETERMINED BY THE TRIER OF FACT.

There are genuine issues of material fact relating to the participation agreement at issue

CASE NO. 05-21550-CIV-KING/GARBER

between the parties. In particular, there is conflicting testimony and documentation relating to the agreement at issue.    The Plaintiff asserts that there was an agreement and the Defendants claim that there was no agreement. However, the Defendants' client card for Jacobson and the Defendants' letters to the Plaintiff are consistent with the Plaintiff and Marvin Braun's (Jacobson's stepbrother) testimony as to how Jacobson got to the Defendants.

The Plaintiff has testified in deposition and in an affidavit that there was an agreement for the Plaintiff, Paul Marcus, to be a participating attorney with the Defendants in representing Jerry Jacobson in the Federal prosecution of Jacobson in the McDonald's Monopoly matter. Marvin Braun's testimony, consistent with the Plaintiff's testimony is the following:

> ...I flew up in the early afternoon, on like a 1:00 o'clock flight. I got my brother out of jail... We then were referred to an attorney by Don Hart who lives in Atlanta, Georgia. He referred us to an attorney. I don't remember the gentleman's name. It was in northern Atlanta. And at approximately 5:00 o'clock in the evening we went to this guy's office. It was myself, my brother and his wife at the time... During that period of time I had my little portable telephone with me and my wife called and she said, 'You've got to call Jeff Marcus immediately.' And I said 'We're meeting with this guy.' She said, 'Call Jeff, he said it's important.' So I called Jeff and Jeff said to me that, 'My brother has somebody in Atlanta who's supposed to be the best there is, and everything else, and that you've really got to speak to Paul Marcus.' And I said, 'Okay, give me Paul's phone number.'... And I called Paul and Paul told me about Edward Garland, who I had never heard of him before... Paul said to me that, This is the guy that you want to use, and everything else, the best and everything else. I called my brother and sister-in-law out of the room and I says, Look, I think we've got to go with this other guy. I said, 'My gut tells me that if Paul tells me this guy is what he says he is, then we've got to go with him.'... I called Ed Garland, you know, from another room, and I said 'We're going to leave this guy's office now and come to meet you.' And this is now after 6:00 o'clock. And this guy, Ed Garland said, 'Don't. You're in northern Atlanta and I'm in mid-Atlanta and it's going to take you an hour and a half to get down here. It's too late. Let's all just meet tomorrow at 8:00 o'clock.'... And then the next morning we did meet Ed Garland. (App. D,pp.6-8).

Braun was acting on his stepbrother's behalf in obtaining counsel as he describes in his deposition:

> Q. And when you spoke to Mr. Marcus. why were you doing the speaking to Mr. Marcus about an attorney for your brother?

CASE NO. 05-21550-CIV-KING/GARBER

A. We had just gotten my brother out of federal prison, and if you heard the stories that he told us, he was devastated. He was like brain dead, almost. He was like brain dead. He had just gone approximately forty-eight hours arrested and he had been on national TV. There were thousands of - - we went to his house to stay there and I think there was like three hundred television trucks outside of his house. And so we ended up staying in a Holiday Inn or at a Marriott or something like that. And he was like brain dead at the time.

Q. Mr. Braun, would it be a fair statement to say that you were acting on your brother's behalf at the time you spoke to Mr. Paul Marcus about Mr. Edward Garland?

A. I definitely was. I mean, my brother could not make a decision at the time. (App, pp. 15-16).

The Defendants' own signed letters to the Plaintiff thank the Plaintiff for the referral of Jacobson and a notation on the check sent to the Plaintiff by the Defendant references a referral agreement. The payment of the $5,000.00 check to the Plaintiff by the Defendant is not listed as a cost in the Jacobson case by the Defendants. Presumably it was paid from the attorneys' fee which had been previously paid by Jacobson.

The Defendants claim that the oral agreement between the parties violates the Florida Rules of Professional Conduct. The Plaintiff made numerous attempts to assure the oral agreement had been reduced to writing and was in compliance with the Rules Regulating the Florida Bar. Florida Rules of Professional Conduct Rule 4-1.5(g)(2) states that "a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and: (1) the division is in proportion to the services performed by each lawyer; or (2) by written agreement with the client: (A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and (B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made." The Plaintiff repeatedly requested a copy of the written retainer agreement from Defendant Garland. Furthermore, the Plaintiff repeatedly requested that Defendant Garland allow him to participate

-9-

CASE NO. 05-21550-CIV-KING/GARBER

in the case as agreed to, and in accordance with the Rules Regulating the Florida Bar. Defendant Garland essentially ignored the Plaintiff's requests.[4]

The Defendants cite, *The Florida Bar v. Carson*, 737 So. 2d 1069 (Fla. 1999), in support of their position that the subject agreement is a breach of Rule 4-1.5. *Carson* is factually distinguishable from this case because in *Carson*, which involved contingency fee, there was no intention of ever reducing the oral agreement of a referral fee to writing, nor for the attorney to participate in the case. Here, the Plaintiff, Paul Marcus, had every intention of there being a written agreement reflecting the oral agreement in accordance with the Rules Regulating the Florida Bar and Plaintiff had every intention of participating in the case as evidenced by his correspondences and telephone calls updating Mr. Garland on what was happening in Miami. [5]

The Defendants claim that the oral agreement between the parties violates the Rules of Professional Responsibility, because it is not in writing, and is therefore void. The sole reason there is no written agreement is because the Defendant, Garland, refused to reduce the agreement to writing and send it to the Plaintiff . If Garland had reduced the agreement to writing and informed the client, Jacobson, of the agreement, then the agreement or contract would be in accordance with Rule 4-1.5(g). The terms of the division of the fees would have been expressed in the written agreement had the Defendant done his job as receiving attorney and committed the terms to paper. For the Plaintiff to have interfered with the representation of Jacobson by having a fee dispute during the ongoing case would have been a case violation of the Florida Rules of Professional Conduct and/or would have prejudiced Jacobson.

---

[4] "Please send me a copy of the Retainer Agreement" appears in a letter dated September 17, 2001 from Paul Marcus to Ed Garland. "I do not understand why you refused my participation and input... we agreed that I wold be participating in discussing matters with you. In fact, you explicitly and agreed to the same" appears in a letter dated April 15, 2002 from Paul Marcus to Ed Garland. (App. B).

[5] Id.

CASE NO. 05-21550-CIV-KING/GARBER

The Defendants should not benefit from their failure to act in accordance with the Rules Regulating the Florida Bar. *In the Florida Bar Re Amendments to the Rules Regulating the Florida Bar*, 519 So. 2 nd 971 (Fla. 1987) the Florida Supreme Court in addressing the "Enforceability of Fee Contracts" found that legal fee contracts would ordinarily be enforceable unless illegal, obtained through improper advertising or solicitation, prohibited by the rule, or clearly excessive. *Id* at 975. Therefore, flawed fee agreements can and have been found to be enforceable. *State Contracting & Eng'g. Corp. v. Condotte Am., Inc.* 368 F. Supp. 2d 1296, 1305 (S.D. Fla, 2005); *Lackey v. Bridgestone/Firestone, Inc.* 855 So. 2d 1186, 1188 (Fla. 3d DCA 2003), rev. denied, 870 So. 2d 822 (Fla. 2004); *Frankling & Marbin, P.A. v. Mascola*, 711 So. 2d 46 (Fla. 4th DCA 1998); and *Corvette Shop & Supplies, Inc. V. Coggins*, 779 So. 2d 529, 531 (Fla. 2d DCA 2000). Viewed in a light most favorable to the Plaintiff the agreement at issue may have been flawed, but enforceable.

## B. PLAINTIFF'S BREACH OF CONTRACT CLAIM

## IS NOT BARRED BY THE STATUTE OF FRAUDS

The Defendants argument that the agreement at issue is barred by the Statute of Frauds because the intent was that the agreement would last more than one year also fails. There are a number of factual reasons and legal reasons why this argument fails. The facts include; the attorneys' fee was paid in less than a year by Jacobson; the Defendants acknowledged the referral of Jacobson to Garland in writing within a year; and the Defendants made a partial payment to the Plaintiff. Legally, Plaintiff does not allege that the Defendants promised to pay the debt of another person, and therefore, the Statute of Frauds is inapplicable here.*Carole Korn Interiors, Inc. V. Goudie*, 573 So. 2d 923 (Fla. 3rd DCA 1991).

None of the cases cited by the Defendants involve an attorneys' fee contract and so the Defendants have presented no authority for the Statute of Frauds to apply to the attorneys' fee

CASE NO. 05-21550-CIV-KING/GARBER

contract in this case.  In a case in the Supreme Court of Idaho, the Court held that an oral

agreement to pay attorneys' fees does not fall within the Statute of Frauds.  *Beaupre v. Kingen*,

109 Idaho 610, 710 P. 2d 520 (1985).  Even if the Statute of Frauds was applicable, the

documents, including correspondence and checks relating to the oral agreement in this case create

questions of material fact concerning the Statute of Frauds for the trier of fact.   *Impossible

Electronic Techniques v. Wackenhut Protective Systems, Inc.*, 669 F. 2d 1026 (5th Cir. 1982).

Accordingly, the Defendants' Motion for Summary Judgment as to the Statute of Frauds should

be denied.


CONCLUSION


The Defendants' Motion for Summary Final Judgment should be denied as a matter of law

as there are issues of fact to be determined by the trier of fact.


Respectfully Submitted,


LEVEY, AIRAN, SHEVIN, ROEN,
KELSO, CORONA & HERRERA, LLP
Gales One Tower, Penthouse
1320 South Dixie Highway
Coral Gables, Florida 33146
(305) 661-6664 (Telephone)
(305) 661-6477 (Facsimile)
mms@leveypa.com (e-mail)

By: _____
MARY MARGARET SCHNEIDER
Florida Bar No. 614009


-12-

CASE NO.  05-21550-CIV-KING/GARBER

   I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed  this

___3 1___ day of _____, 2006, to Joseph Beeler, Esq., and Bryan R. Cleveland,

Esq., Ferrell, Schultz & Fertel, P.A., 201 South Biscayne Boulevard, 34th Floor, Miami Center,

Miami, Florida  33131.

         LEVEY, AIRAN, SHEVIN, ROEN,
         KELSO, CORONA & HERRERA, LLP
         Gales One Tower, Penthouse
         1320 South Dixie Highway
         Coral Gables, Florida 33146
         (305) 661-6664 (Telephone)
         (305) 661-6477 (Facsimile)
         mms@leveypa.com (e-mail)

         By: _____
           MARY MARGARET SCHNEIDER
           Florida Bar No. 614009

N:\1835\001\oppmotFSJ.wpd{5/31/ 2006-6:01 pm}